MILO F. KELLOGG, APPELLANT, v. LUKE LAVENDER AND OTHERS, APPELLEES.

1. **Specific Performance.** A plaintiff need not in all cases necessarily perform or offer to perform all of his part of a contract in order to maintain an action for specific performance. *So held*, Where defendant had entered into an agreement for the sale of certain real property to the plaintiff, who paid part of the consideration, gave notes for the balance, which were sold and endorsed by defendant to a third party, upon payment of which defendant was to give a deed for the property, and before the maturity of the note judgments were recovered against defendant, which were in form a lien upon the property, the contract not having been recorded, and defendant, after maturity of the notes, conveying the property to another.

Kellogg v. Lavender.

2. **Notice.** A conveyed land to B, a married woman; C had an equitable interest in the land, of which A had knowledge when he received the title, as well as when he conveyed it. The negotiations on the part of B for the purchase and conveyance of the land were conducted by her husband, as her agent, who was a partner in a firm of general land agents, who, at the time of these transactions and for some time previously, had the said real property on their books for sale as the property of C, he, the husband, having entered the same on said books, and knowing of the interest of C in the property, although the naked legal title was in another. *Held*, That B had notice of the equitable interest of C, and took the title subject thereto.

APPEAL from Lancaster county district court. The action was for the specific performance of a contract which, with the facts prior and subsequent to its execution, are set forth in the opinion sufficient to an understanding of the case. Defendants below had judgment before POUND, J., dismissing the case, and plaintiff appealed.

*Lamb, Billingsley & Lambertson* and *Brown & Marshall,* for plaintiff in error.

1. Time is not of the essence of this contract. *Dorsey v. Hall,* 7 Neb., 464. *Hoagland v. Latourette,* 2 New Jersey Eq., 254. *Huffman v. Hummer,* 17 Id., 264. *King v. Ruckman,* 21 Id., 599.

2. Where the vendor again sells the estate of which, by reason of the first contract, he is only seized in trust, he will be considered as selling it for the benefit of the person for whom by the first contract he became trustee, and therefore liable to account, or the second purchaser, if he had notice at the time of his purchase of the previous contract, will be compelled to convey the property to the first purchaser. *Hoagland v. Latourette,* 2 New Jersey Eq., 254. *Downing v. Risley,* 14 Id., 94. *Murray v. Ballou,* 1 Johns. Ch., 566.

3. The entry of Kellogg into possession and his

payment of part of the price are of themselves a suffi-
cient ground to entitle him to relief when perhaps re-
lief could not otherwise be granted. *Bellamy v. Rags-
dale*, 14 B. Monr., 364. *Edgerton v. Peckham*, 11 Paige,
352. *Hoag v. Owen*, 60 Barb., 34.

4. The plaintiff should not have been turned out of
court without any relief, and if the court were of the
opinion that there was a rescission at Salem, it should
have done equity between the parties, the plaintiff
should have had a decree for the re-payment for the
advanced purchase money—*Eaton v. Redick*, 1 Neb.,
305—and a decree enforcing an equitable lien on the
land for the amount he had already paid. *Wickman v.
Robinson*, 14 Wis., 493, and cases cited. Story's Eq.,
sec. 1217. 1 A. K. Marshall, Ky., 495. *Willard v.
Taylor*, 8 Wallace, 567. *Quinn v. Roath*, 37 Conn., 16.
*Snell v. Mitchell*, 65 Me., 48. *Smoot v. Rea*, 19 Md.,
398.

*Harwood & Ames* and *James E. Philpott*, for appellees.

1. Is not an estoppel against Kellogg proven in
favor of Lavender and his grantees? Acting in good
faith, upon the refusal of Kellogg to complete the pur-
chase, Lavender conveyed with warranty to Philpott
and Cantlon, to whom the refusal was made, and they
also, relying upon the refusal and circumstances, pur-
chased for and paid a valuable consideration.

2. The contract between Lavender and Kellogg
was never acknowledged or made of record, and there
is no testimony that E. Mary Gregory, the present
holder, for a valuable consideration, of the title under
Lavender's grantees, ever had any notice or knowledge
of it until after the commencement of this action.

3. No fault can be imputed to Lavender, and con-
sequently none to his grantees, or those claiming under

them. He only contracted to convey upon payment of both notes. An action is now pending on the last note, against Lavender as endorser, which may be prosecuted to judgment; and Lavender and his grantees have never been apprised of its payment, neither has it been paid, unless the articles of confederation found in the record are regarded as payment, which we apprehend will not be done, especially because of the fact that Parshall, the owner of the note, whose action is now pending upon it, has declined to accept a partnership in the confederacy as payment. That he is wholly ignorant of the final consummation of the scheme is evident both from the record and from the absence of his testimony as a witness. He is one of the enemy upon whom the "confederate brigadiers" of this transaction hope to subsist.

Cobb, J.

The plaintiff purchased the real estate in question— two city lots in Lincoln, with a dwelling house thereon, on the 13th day of July, 1872; the said purchase was evidenced by a writing of which the following is a copy:

"Agreement made and entered into the thirtieth day of July, 1872, between Luke Lavender, of Lincoln, county of Lancaster, and state of Nebraska, and M. F. Kellogg, city of Lincoln, county, state aforesaid. Witnesseth that the said Luke Lavender, in consideration of the sum of five hundred dollars now paid, and the sum of one thousand dollars to be paid the first day of May, A.D. 1873, and the further sum of one thousand dollars to be paid on or before the first day May, 1874, when a deed is executed, doth grant, bargain, and sell unto the said M. F. Kellogg, his heirs and assigns, all that piece or parcel of land situate in the county of

Lancaster, city of Lincoln, and known on the recorded plat as lots 11 and 12, in block 10 of Lavender's addition to Lincoln, together with all and singular the appurtenances thereunto belonging or in anywise appertaining; and the parties hereby bind themselves, their heirs, executors, and administrators for the performance of all and every part of the above agreement. As witness our hands and seals, day and year first above written."

    " Signed, sealed, and delivered
    · In the presence of,        " LUKE LAVENDER.
    "Witness:                     " M. F. KELLOGG.
        " C. O. PARMENTER."

The plaintiff paid the $500 down, and executed and delivered notes for the two deferred payments as set out in the agreement. The agreement was not acknowledged or recorded. Kellogg went into possession of the property, and with his family moved into the house on the premises and continued to reside there for about a year. The first deferred payment was about to become due, and the plaintiff (Kellogg) being unable to raise more than seven hundred of the thousand dollars, applied to J. W. Hartley, a banker, gave him the seven hundred dollars which he had, and obtained from him an agreement to advance the remaining three hundred dollars and take up the said note when it should become due, and to secure him, and finally to repay the three hundred dollars, he placed the said property in the hands of Hartley to be rented and sold; he the said Kellogg removing with his family from said property to Salem, Richardson county. In accordance with said agreement between Kellogg and Hartley, the said first note was paid at or about maturity; and about that time, in the spring or summer of 1873, the said Hartley placed the said property in the hands of McMurtry & Gregory, land agents,

to rent and sell the same on account of Kellogg, the plaintiff.   They agreed to act as such agents—the defendant Gregory placing the description of the property on their books.   McMurtry & Gregory acting as such agents, received and communicated to Hartley several offers to purchase said property, none of which were accepted.

Upon making the said contract and sale, the defendant, Luke Lavender, took the two notes hereinbefore described to Deacon Tingley, who, as the agent of one Parshall, a non-resident, was engaged in loaning and investing money, collecting the same, etc., and sold them to him, endorsing one of them—the first one to fall due—without recourse, and the other generally. Philpott & Cantlon were Lavender's general attorneys, and one of them drew up the said contract of sale between Lavender and Kellogg.   About the time of the last mentioned note becoming due, it was put into the hands of Philpott & Cantlon for collection on account of said Parshall, who owned it through Tingley his agent.   They at the same time procured a deed to be executed by Lavender to Kellogg of the said lots, and one of them went to the home of the said Kellogg and tendered him the deed, and demanded payment of the note.   The note was not paid, whereupon it was returned to Tingley as uncollectible, and shortly afterwards the property was conveyed by Lavender to Philpott & Cantlon, who shortly afterwards sold and conveyed it to the defendant, E. Mary Gregory, wife of John S. Gregory, the trade being in fact made by the said John S. Gregory.

Thus it is seen that, by reason of the failure of Kellogg to pay the notes, and the action of Lavender in conveying the land upon such failure, unless the plaintiff is entitled to relief in this action he has lost the $1200 which he has paid, and is liable for $1300 more,

but which he is probably unable to pay, and in that case the same will be a total loss to Parshall and Hartley, both of whom have acted in good faith in the premises.    Kellogg has not performed his part of the contract entirely.    But does that preclude him from all relief in a court of equity ?    When the last note became due he did not pay it for two reasons : *First*, he was unable to pay it; and *second*, had he been able to pay it, Lavender had suffered the lots to become incumbered by judgments then of record against him, and so Kellogg could not have paid off the said note with safety without having first applied to a court of equity to have the said moneys applied upon said judgments, and the lien thereof taken off from the said property. And this could not have been done because Lavender had sold and endorsed the said note to Parshall, and the money, had Kellogg been able to pay it at maturity, must have gone to him.    It will not be deemed necessary to cite authorities to the effect that equity will not require of the plaintiff, as a condition precedent to his bringing suit for a specific performance, that he should have made payments which the principal defendant has placed it out of his power to make, with safety and justice to the rights of others.    But, laying aside the consideration of the effect of the judgments rendered against Lavender, and which were consequently incumbrances upon the title of the property in question, it is not always necessary that a plaintiff, in order to maintain an action for specific performance, should first perform, or offer to perform, all of his part of the contract.    Says an eminent legal writer: " The law holds parties strictly to the very terms of their engagements, and demands from the plaintiff an exact performance of all the stipulations on his part which are essential to a recovery, or else no legal right of action accrues to him.    Equity distinguishes between

those terms and stipulations which are of the essence of the contract and those which are not of the essence, and does not permit the defendant to set up a breach of the latter as a complete bar to all relief, or as a sufficient reason for wholly refusing to execute the agreement. In these cases no action at law can be maintained; but equity, if the contract is otherwise a proper one, will decree a specific performance with such compensations or allowances as may be found just to the parties." Pomeroy on the Specific Performance of Contracts, sec. 29. "Even when the partial failure or inability to perform, and the consequent loss of a legal remedy, result directly from the default of the plaintiff himself, the contract will be specifically enforced if the relief is demanded by equitable principles." Ibid. The same doctrine is stated by Lord Redesdale in the following language: "Courts of equity have therefore enforced contracts specifically where no action for damages could be maintained; for at law the party plaintiff must have strictly performed his part, and the inconvenience of insisting upon that in all cases was sufficient to require the interference of courts of equity. They dispense with that which would make compliance with what the law requires oppressive; and in various cases of such contracts they are in the constant habit of relieving the man who has acted fairly, though negligently." *Lemmon v. Napper*, 2 Sch. & Lef., 682.

In this case time was not an essential nor even a material element in the contract. Lavender, by trading off the notes, had not only made it a matter almost, if not quite, of indifference to himself whether they were ever paid or not, but had placed it out of his power to return the notes to Kellogg for the purpose of rescinding the contract. In order to have made time an essential element in the contract, the

same being worded as it was, it would have been neces-
sary for Lavender to have notified Kellogg to pay the
unpaid note within a reasonable time then specified,
and upon his failure to pay within such time he must
then have placed him in *statu quo*, returned to him the
$1500 already paid and the unpaid note.

Such were the conditions of the parties when the de-
mand was made for payment, and deed tendered by
Cantlon. This demand was peremptory and no time
given for compliance with its terms. The testimony is
conflicting as to what response Kellogg made to this de-
mand of payment, and the reasonableness of Kellogg's
statement inclines me to take it for true rather than
the other, which lacks that element. It is unreasona-
ble that, having paid twelve hundred dollars on this
property and having placed it in the hands of a respon-
sible banker to be rented and sold, he would have said
less than he claims to have said in response to Cantlon's
demand. And the demand was one which Lavender
nor his agent was in a condition to make, nor was it
reasonable; and even if Kellogg did in his despair of
being able to save his property use the language attri-
buted to him by Cantlon, under the circumstances it
should not be considered sufficient evidence of his
abandonment of his right to the property.

Upon the non-payment of the last note by Kellogg
it would have been competent for Lavender, who was
legally held upon it as endorser, to have taken it up,
and had it not been for the judgments which had been
recovered against him, and constituted liens on the
property, to have brought a suit for specific perform-
ance. In that event he would have been entitled to a
judgment for the sale of the property and the applica-
tion of the proceeds of such sale to the payment of the
said note, the residue, if any, to go to Kellogg or such
other parties as might seem to be equitably entitled

thereto. Before leaving this branch of the case to pass to the consideration of the question of notice to the present holder of the legal title, I will only add that, as between Lavender and Kellogg, the case stands now precisely as it would have stood in the case above put.

The only remaining question is: Had the defendant, E. Mary Gregory, notice of the equitable title of Kellogg in the premises at the time of her purchase.

It appears from the testimony that Philpott & Cantlon had full notice of all the facts in the case, so that they took the title charged with all the equities. They retained the title for somewhat less than two months, when they conveyed it to the defendant, E. Mary Gregory.

It also appears from the testimony that E. Mary Gregory is the wife of John S. Gregory. That John S. Gregory and J. H. McMurtry were in 1874, and previously, co-partners in the business of real estate agents in the city of Lincoln. That some time in the winter or early spring of 1874, the real estate in question was placed in the hands of said McMurtry & Gregory to sell on account of the plaintiff. They made several attempts to sell the property, but without success. Hartley, Tingley, and Lamb, all of whom were interested in the sale of the property on account of the plaintiff, had repeated interviews with McMurtry & Gregory in regard to the same. So far as the testimony shows, while the property was in the hands of these land agents and the plaintiff, and those interested with him expecting them to sell the property, the conveyances from Lavender to Philpott & Cantlon, and from them to Mrs. Gregory, were made, and it appears from the testimony of John S. Gregory that he " made the trade with Philpott," which is evidenced by the deed from Philpott & Cantlon to E. Mary Gregory. That he went into possession soon afterwards, and now makes his

home on the property. It cannot be doubted that he knew of the equities of the plaintiff. And even if the court shuts its eyes to the evidence, that this is one of those cases becoming too numerous throughout the country, where the name of the wife is used in conveyances without her knowledge or participation in the business at all, yet we are bound to presume that he, assuming to act as her agent, communicated to her all the knowledge which he possessed on the subject. Wade on Notice, p. 312 and 313, and authorities there cited.

I conclude, therefore, that the plaintiff is entitled to a specific performance of the contract, and to have the said property treated as a fund out of which the sums severally due to Hartley and Parshall be paid, and so far as may be he be re-imbursed the $1200, paid by him on the contract.

It appears from the testimony that the possession of the real estate in question, as well as the plaintiff's equitable title thereto, were by the plaintiff placed into the hands of J. W. Hartley as collateral security for $300, advanced by him to assist in taking up the first of the $1,000 notes, and that he received some money as rent for the premises, to be applied thereon. Also that Robert F. Parshall is the owner of the last said $1,000 notes.

It also appears from the record that Palmer Way, John Johnson, Dwight G. Hull, H. Atkins, A. K. White, Mary Lavender, Monell & Lashley, A. S. Godfrey & Co., Samuel Roach, Alfred Parmenter, T. B. Sloss & Smith, H. C. Hastings, The First Baptist Church, Farmer Brothers, and Seth Robinson, each have judgments of record in the said county of Lancaster against the said Luke Lavender, which constitute liens in form against and upon the said real estate.

It is a rule of equity jurisprudence that all persons having a joint and common interest in a bill must be made parties thereto either as plaintiffs or defendants. *Boughton v. Allen*, 11 Paige's Chancery, 321. Hence, before a final decree can be entered in this case, it will be necessary that Parshall and Hartley be brought in as parties, and for the purpose of preventing a multiplicity of suits, and that the property, if it should become necessary that it be sold under the decree of the court, bring the best price, it will also be necessary that the persons named as judgment creditors of the defendant Lavender be also made parties to the bill, that their several claims and liens upon the said real estate may be adjudicated in this action.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings, in accordance with the above views.

REVERSED AND REMANDED.