# STATE EX REL. CITY OF CHEYENNE v. SWAN, COUNTY TREASURER.

CONSTITUTIONAL LAW — LEGISLATURE — RIGHT TO RESORT TO LEGISLATIVE JOURNALS TO IMPEACH AN ENROLLED ACT — EFFECT UPON REMAINDER OF ACT WHEN ONE SECTION VOID — STATUTE OF 1897 AFFECTING SALES OF LANDS FOR TAXES.

1. It is competent for the courts to consult the legislative journals in reference to a matter which the constitution expressly requires to be recorded therein, concerning the constitutional procedure for the passage of a legislative enactment; and in case upon such an examination it affirmatively appears, in respect to the requirements aforesaid, that the bill did not, in fact, pass the Legislature, or did not receive the constitutional majority, and therefore did not constitutionally become a law, they may be used to impeach the enrolled act, although the latter is signed by the presiding officers of both houses, and carries the approval of the governor.

2. The presumption is, that an act of the Legislature found properly signed by the presiding officers, approved by the governor, and deposited in the office of the secretary of state, with the other acts of the session, was regularly passed, which presumption is only to be overcome by evidence of which the courts take judicial notice, showing the contrary.

3. Whenever the existence of an act of the Legislature is called in question, the court may resort to any source of information capable of conveying to the judicial mind a clear and satisfactory answer to such question.

4. The provisions of the constitution which require each house to keep a journal of its proceedings (Art. 3, Sec. 13), and prohibit any bill from becoming a law except by a majority of all the members elected to each house, and unless on its final passage the vote be taken by the ayes and noes, the names of those voting being entered upon the journal (Art 3, Sec. 25 ), constitute the journals concerning the action of the Legislature, upon the final passage of an act a record, which by an affirmative showing to the contrary, is competent to overthrow the presumption arising from the certificates of the presiding officers, and the lodgment of the enrolled act with the Secretary of State.

5. The court has authority, and it is its duty to examine the legislative journals to determine whether or not an act, which is questioned, was passed by a majority of the members elected to each house, that being a matter which the constitution requires to be shown by the journals; and where it is affirmatively disclosed by the journals that one section of the act (in this case the first) as enrolled and published, did not finally pass either branch of the Legislature, and did not pass by a majority of the members elected to each house, such section is not a law and must be adjudged void.

6. Where a section of the act which did pass the Legislature, as disclosed by the journals, is not copied into the enrollment and does not receive executive approval, it does not become a law.

7. Where one section of an act (in this case the first) which actually passed the Legislature is not included in the enrollment and the published statute, but in its stead a section is included in the enrollment and published statute which did not pass the Legislature, as affirmatively disclosed by the journals; if the portion or section of the act which did actually pass, and is not included in the enrollment and therefore is not a law, has any material relation to other portions of the act so as to modify, restrict, or extend its application, then such other portions must also fall.

8. In the act in question, by eliminating Section one as it actually passed the Legislature, which must be done as it did not become a law, being excluded from the enrollment; and also eliminating Section one as found in the enrollment, which must be done as it is void for not having passed the Legislature, the application of Section two is made much narrower than would have been the case had the act as actually passed been correctly enrolled and approved by the governor. Upon these facts, held, that Section two is so inseparably connected with the preceding section, that without such section, it can not stand.

9. Section three, which merely repeals all inconsistent and conflicting acts, has no effect whatever without the two preceding sections.

10. Sections 1 and 2 of Chapter 56 of the Laws of 1897, being an act entitled, "An Act relating to the sale of real estate for delinquent taxes, and fixing the fees to be charged therefor, as the same appear in the published laws, are void; and Section 3 of said act is of no effect.

[Decided December 15, 1897.]

Reserved Questions from the District Court for Laramie County, Hon. Richard H. Scott, Judge.

This was a proceeding in which the relator, the city of Cheyenne, a municipal corporation, sought the writ of mandamus to compel Daniel S. Swan, as County Treasurer of Laramie County to sell certain property upon which it was alleged taxes were due to said city for the year 1896 and previous years, and which the respondent declined to sell on the ground that the act which authorized the county treasurer to sell lands for delinquent taxes due to a city or town situated within the county, viz.: Chapter 56, Laws of 1897, was invalid and a nullity. The cause was submitted to the district court upon an agreed statement of facts, whereupon that court reserved for the decision of the Supreme Court certain questions which are set out in the opinion. The material facts are also stated in the opinion.

*E. W. Mann*, for the relator.

The weight of authority, it is contended, favors the proposition that the legislative journals can not be used as evidence to impeach the validity of an enrolled act, and hence are not competent evidence to show that Section 1 of the act in question is not an exact copy of the section as it passed the Legislature. The enrolled act, signed by the presiding officers of both houses, and by the executive, is the sole expositor of its own contents and the conclusive evidence of its existence and valid enactment. (23 Ency. L., 202 and cases cited; Field v. Clark, 143 U. S., 649; Const. Art. 3, Secs. 13, 25, and 28.)

*R. W. Breckons*, for the respondent.

An affirmative showing by the journals of the Legislature that an enrolled act did not receive a vote of a majority of the members elected to each house; or that it was never placed upon its final passage in both houses;

or that the vote taken by the ayes and noes upon its final passage was not entered on the journal, must invalidate the law.    Any other rule would render the constitutional requirements nugatory.    It was certainly intended that the journals might be resorted to for the purpose of ascertaining whether any act had been constitutionally passed.    The following cases hold that the journals may be consulted to determine such question.    Sayre v. Pollard, 77 Ala., 608; Smithee v. Carth, 33 Ark., 17; Stevenson v. Colgan, 91 Cal., 653; County v. S. P. R. R. Co., 8 Sawyer, 238; In re Roberts, 5 Colo., 530; State v. Brown, 20 Fla., 407; So. Ottawa v. Perkins, 94 U. S., 260; Div. of Howard Co., 15 Kan., 194; Legg v. Annap., 42 Md., 203; Rode v. Phelps, 80 Mich., 598; State v. Mead, 71 Mo., 266; Lineon v. Haugan, 45 Minn., 451; State v. Mc Clelland, 18 Neb., 236; Opinion of Justices, 52 N. H., 622; Miller v. State, 3 O. St., 475; Currie v. Co., 21 Or., 566; State v. Hagood, 13 S. C., 46; Brewer v. Huntington, 86 Tenn., 732; Wise v. Berger, 79 Va., 269; Osborne v. Staley, 5 W. Va., 85; Meracle v. Down, 64 Wis., 323; Brown v. Nash, 1 Wyo., 85; Ritchie v. Richards, 47 Pac., 670 (Utah). The case of Field v. Clark cited by counsel for relator is clearly distinguishable from the case at bar, and the court in that case expressly refused to decide the question here involved.

A review of the authorities supposed to announce a doctrine opposed to the competency of the journals will disclose that the only States which deny the proposition contended for by respondent are Indiana, Mississippi, New Jersey, Nevada, and Washington.    In Indiana, Mississippi, and New Jersey, however, the question as to the effect of the failure of the journal to show such matters as are required to be shown by the constitution has not been discussed, and therefore Nevada and Washington are the only States where the doctrine relied on by respondent is disputed.    The following text writers support the competency of the journals.    (Cooley on Const. Lim.,

164, 165, 171; Sutherland Stat. Const., Secs. 41 and 42; Sedgwick Stat. Const. 55.

The rule that the unconstitutionality of any part of an act does not render the whole act void if the provisions can be separated, seems to be applicable to this case. (State v. Robinson, 20 Neb., 96; State v. Hagood, 13 S. C., 46.)

POTTER, CHIEF JUSTICE.

In this case the relator, the city of Cheyenne, filed its petition in the district court for the county of Laramie, alleging its character as a municipal corporation, and that prior to the first day of March, 1897, it was allowed by the laws of the State of Wyoming, to collect the taxes due to itself for municipal purposes, and, among other things, to sell real estate within its corporate limits upon which such taxes had become delinquent in the manner provided by the laws of the State of Wyoming, and by its own ordinances; but on the first day of March, A. D. 1897, there was approved by the governor an act passed by the fourth State Legislature entitled, " An Act relating to the sale of real estate for delinquent taxes, and fixing the fees to be charged therefor," which said act appears in the published session laws of the said fourth Legislature as chapter 56 thereof. That according to the provisions of said act, it was made the duty of the county treasurer, on the first Monday in November in each year, at his office, to offer at public sale all lands on which the taxes levied for State, county, village, city, school district, or other purpose for the previous year should still remain unpaid, and that said act repealed all other acts inconsistent therewith.

It is then alleged that a demand had been duly made upon the defendant by the relator, that he should advertise for sale in the manner provided by law, and that at the time provided by law he should offer for sale all lands within the corporate limits of relator upon which the taxes for the year 1896, and previous years, duly remained

unpaid; and that the defendant, the county treasurer of Laramie County, refused to advertise the said lands for sale for said taxes.   The prayer of the petition is for a writ of mandamus commanding the said county treasurer to comply with the provisions of the act aforesaid · as the same appears in the published laws of the fourth Legislature, so far as the taxes due to the city of Cheyenne for the year 1896 and previous years are concerned.

The respondent resists the application for mandamus on the grounds as set forth in the answer, that the act under which it is made his duty to sell lands for delinquent city taxes, did not receive the vote of a majority of all the members elected to each house of the fourth Legislature; that it was never placed upon its final passage in both houses; that there was no vote taken by ayes and noes upon the final passage of such act; and because the names of those voting thereon in the fourth Legislature were not entered upon the journals of said Legislature.

An agreed statement of facts was filed upon which the case was submitted, and thereupon the district court reserved to this court for its ·opinion, certain questions, found to be important and difficult, as follows :

*First.*   In the State of Wyoming, can the journals of the House and the Senate of the State Legislature be resorted to for the purpose of declaring invalid an act of the Legislature signed by the presiding officers of both houses and approved by the governor, and if so, to what extent?

*Second.*   Is Section 1, of Chapter 56, of the laws of the year 1897, as the same appears in the bound volume of the laws of said year, valid?

*Third.*   Is any part of Section 1, of Chapter 56, of the laws of the year of 1897, as the same appears in the printed volume of said act, valid, and if so, what part or parts?

*Fourth.*   Are sections two and three of said act valid?

*Fifth.*   Is it the duty of a county treasurer in the State of Wyoming to sell all lands on which the taxes

levied for State, county, or city purpose remain unpaid?

*Sixth.*  When is the treasurer of a county in the State of Wyoming compelled to sell property for delinquent taxes?

*Seventh.*  In selling property for taxes due the county or city, has the treasurer of a county in the State of Wyoming the right to sell property for taxes due for previous years?

The questions reserved and the matters at issue in the action involve in the first place an inquiry into the validity of section one of the act aforesaid, as published in the session laws, and known as Section 1, of Chapter 56 of said published laws.  In the agreed statement of facts which we find to conform to the showing made by the journals, the action of the Legislature which finally resulted in the enrolled bill which was approved by the governor, thus creating the purported act aforesaid, is shown to have been as follows:

On the 23d day of January, 1897, there was introduced in the House of Representatives "A bill for an act relating to the sale of real estate for delinquent taxes, and fixing the fees to be charged therefor," which title, it will be observed, corresponds exactly with the title of Chapter 56, aforesaid.  Said bill was designated as House bill number forty.  On January 29, section one of said bill was amended in the House of Representatives; on February second, the said bill passed the House of Representatives as amended, the voting being taken by ayes and noes, and the names of those voting thereon being entered on the journal showing that thirty of the members of the House had voted in favor of the passage of the bill, that three had voted against it, and that five members were absent.  The journal therefore shows that the bill had regularly passed the House, receiving a vote of a majority of all the members elected thereto, and that the vote taken upon its passage was by the ayes and noes, and the names of those voting thereon were entered upon the journal.

The bill was then transmitted to the Senate, and in that body on February 9, section one of the bill as it had passed the House was amended by striking out all of the section, and inserting in lieu thereof, an entirely different section, making several material alterations, the main difference being that in the section as amended by the Senate, it was made the duty of the county treasurer to sell lands upon which there were unpaid and delinquent taxes due to any city within the county as well as to sell lands for delinquent taxes of State and county. On February 11, the bill as thus amended, passed the Senate by a majority vote of all the members elected thereto, the vote being taken by the ayes and noes, and the names of those voting thereon being entered upon the journal, showing nineteen votes for the passage of the bill as amended, being all of the members of the Senate. The bill so amended was then returned to the House, and on February 11, 1897, the House by a vote taken by ayes and noes, which was entered upon the journal, refused to concur in the Senate amendment, and requested the Senate to recede therefrom, twenty-six members of the House voting not to concur, three in favor of concurrence and nine absent. On February 11, the Senate by a vote refused to recede from its amendment and a conference committee was appointed by both Senate and House to confer over the differences between the two bodies with reference to section one of said bill.

On February 17, the conference committee presented to both the Senate and the House the following report, which is copied in the journals of both the Senate and the House, to-wit :

"CHEYENNE, Wyo., Feb. 16, 1897.

"MR. SPEAKER : Your joint conference committee to whom was referred H. B. No. 40, beg leave to report as follows :

"We recommend that the Senate recede from its amendments to said bill, and we further recommend that the

following section, as Section 1 of said bill be adopted and said bill be amended by striking out all of Section 1 of said original bill and inserting in lieu thereof the proposed section, to-wit :

"Section 1.    The sales of real estate by all county treasurers in the State of Wyoming for non-payment of taxes shall be held at the front door of the courthouse (or county building), beginning on the first Monday in October of each year, between the hours of nine o'clock in the forenoon and five o'clock in the afternoon, and may adjourn from day to day (Sundays excepted), until all the lands are offered.    After the tax sale as herein provided shall have closed, any real estate remaining unsold for the want of bidders therefor, the county treasurer is authorized and required to sell the same at private sale to any person who offers to pay the amount of taxes, penalties, interests, and costs thereon, and to make to such person such certificate as shall be required by law to be made and delivered as in the case of the sale of any such lands at public sale, with the additional statement inserted therein that such lands have been offered at public sale for taxes, but not sold for want of bidders, and sold for taxes by private sale, and the treasurer is further authorized and required to sell as aforesaid all real estate in his county on which taxes remain unpaid and delinquent for any previous year or years.    Provided, that all sales of real estate for the unpaid taxes due thereon to any such city, town, or village in the State of Wyoming by the treasurer of any such city, town, or village shall be governed by the provisions of this act.

ISAAC BERGMAN,
L. C. TIDBALL,
THOMAS COTTLE,
    *House Committee.*

A. M. APPELGET,
GEORGE W. FOX,
    *Senate Committee.*"

The above is taken from the House journal. In the printed journal of the Senate the report of the conference committee is shown to be precisely the same as the above with the exception that the word "such" preceding the word "city" where it is first used toward the close of the provision of Section 1. as recommended by the committee is omitted.

On February 17, upon the coming in of said report, a motion was made in the House to adopt the report of the joint conference committee and that the amendments recom-- mended by such committee be concurred in. Thereupon the vote was taken by ayes and noes, with the result that thirty-four voted in favor of the motion to concur in such amendment of the conference committee, three opposed thereto, and one was absent; the names of those voting thereon were entered on the journal of the House, and the speaker thereupon announced that the amendment of the conference committee had been concurred in by the House. On the same day in the Senate a like motion was made, and upon a vote of the members of the Senate taken by the ayes and noes it appears that sixteen voted in favor of the motion to adopt the report of such committee and concur in such amendment, and three were absent, there being no votes in the negative. The names of those voting upon such motion in the Senate were entered upon the Senate journal. On February 19, the act was enrolled; but Section 1 of the act as enrolled was not the section which was recommended by the conference committee and which was adopted and concurred in by both House and Senate on February 17; but was the amendment first made by the Senate which was rejected by the House. The enrolled act was signed by the speaker of the House and the president of the Senate and sent to the governor, and the same was approved by him and became Chapter 56 of the printed volume of the laws of 1897.

The question before us, therefore, is whether or not the courts may go behind the enrolled act which is authenticated by the signature of the presiding officers of the two

legislative bodies, and approved by the governor, to determine whether or not such enrolled act is in fact the act which was passed by the Legislature.

There is some conflict among the authorities upon this proposition; some courts going to the extent of holding that the courts are at liberty to resort to the legislative journals to discover whether or not in any instance the constitutional requirement has been complied with in the passage of an act which is found in the office of the custodian of the laws, purporting to be an act of the Legislature and approved by the governor; others only that such journals are competent evidence for the purpose of determining whether or not a constitutional requirement has been observed in the passage of an act of the Legislature where such action of the Legislature is required to be entered upon the journal. Other courts, however, have held directly to the contrary and maintain the conclusiveness of the enrolled act authenticated by the signatures of the presiding officers of the two legislative bodies and the approval of the governor.

When the keeping of the legislative journals is enjoined by the constitution, and that instrument also attaches certain conditions to the enactment of a valid law, and the facts showing a compliance therewith are required to be entered upon the journals, the decided weight of authority in this country favors the resort to such journals to determine whether the law has been enacted in a constitutional manner. The provisions which perhaps more than any other, have caused an adherence to that doctrine are those which relate to the number of votes necessary to the passage of a bill, the taking of such votes by ayes and noes, and the entry upon the journal of the names of those members voting thereon.

The States in which it is held competent to resort to the journals to ascertain whether in the enactment of a law the constitutional requirements have been complied with are : Alabama — Moody v. State, 48 Ala., 115; Sayre v. Pollard, 77 Ala., 608; Moog v. Randolph, id.,

597. Arkansas — Worthy v. Badgett, 32 Ark., 496; Smithee v. Garth, 33 Ark., 17. Colorado — In re Roberts, 5 Colo., 530. Florida — State v. Brown, 20 Fla., 407. Illinois — People v. Stearne, 35 Ill., 121; Larrison v. P. A. & D. R. R. Co., 77 Ill., 11. Missouri — State v. Mead, 71 Mo., 266. Nebraska — State v. Liedtke, 9 Neb., 422; State v. McGilland, 18 Neb., 236. New Hampshire — Opinions of the Justices, 52 N. H., 622. Ohio — Miller v. State, 3 O. St., 475. Oregon — Currie v. So. Pac. Co., 21 Ore., 566. Kansas — Division of Howard Co., 15 Kan., 194. South Carolina — State v. Hagood, 13 S. C., 46. Tennessee — Brewer v. Huntingdon, 86 Tenn., 732. Utah — Ritchie v. Richards, 47 Pac., 670. Virginia — Wise v. Biggar, 79 Va., 269. West Virginia — Osborn v. Staley, 5 W. Va., 85. Wisconsin — Meracle v. Down, 64 Wis., 323. Michigan — Rode v. Phelps, 80 Mich., 598. Maryland — Legg v. Annapolis, 42 Md., 203. Minnesota — Lincoln v. Harrigan, 45 Minn., 541. California v. Kenfield, 54 Cal., 111; Oakland Pa. Co. v. Hilton, 69 Cal., 479; Stevenson v. Colgan, 91 Cal., 653. The same rule was adopted by the Supreme Court of Wyoming when a Territory. Brown v. Nash, 1 Wyo., 85; U. P. R. R. Co. v. Carr, 1 Wyo., 96. In Idaho in the case of County v. Heard, 45 Pac., 890, there is an intimation to the same effect.

The contrary doctrine is held in the following States : Indiana, Louisiana, Maine, Mississippi, Nevada, New Jersey, North Carolina, Texas, and Washington. The State of Connecticut is usually included in this class upon the authority of the case of Eld v. Gorham, 20 Conn., 8. In that case, however, we do not understand that the precise question was involved. The question there under consideration was whether the volume termed " The Revised Statutes of the State of Connecticut " was to be decreed to contain all the public statute laws of the State, or whether the court could go behind it and examine the proceedings of the revision committee to ascertain if they had exceeded their powers.

The leading case in Nevada, State v. Swift, 10 Nev., 176, was decided in 1875. The opinion is expressed in that case that the weight of authority favors the conclusiveness of the enrolled act, and the States of Maryland, Missouri, and California are referred to as upholding that doctrine. Since then, however, in each of those States a different rule has been announced, and a resort to the journals is permitted to impeach an enrolled act. The courts of California and Missouri changed front upon the question on account of changes in their respective constitutions; but, as amended, neither of them differed essentially from the provisions of the Nevada constitution under which State v. Swift, supra, was decided.

The case of Field v. Clark, 143 U. S., 649, as to acts of Congress denied the right to consider the journals as evidence to impeach the correctness of the enrolled act, the contention being made that a section had been omitted therefrom. Article 1, Section 5, of the Federal Constitution contained the provision, which, it was claimed, constituted the journals the best evidence upon an issue whether, in fact, a bill was passed by Congress. That provision requires only that "each house shall keep a journal of its proceedings, and from time to time publish the same, except such parts as may in their judgment require secrecy; and the yeas and nays of the members of either house on any question shall, at the desire of one-fifth of those present be entered upon the journal." And the court said, "In regard to certain matters, the constitution expressly requires that they shall be entered upon the journal. To what extent the validity of legislative action may be affected by the failure to have those matters entered upon the journal, we need not inquire. No such question is presented for determination."

Although Iowa is sometimes mentioned among the States upholding the incompetency of the journals the courts of that State can not be said to have expressly so decided. Indeed, in one case, where the question was whether an amendment to the constitution had been pre-

viously agreed to by the general assembly the court examined the journals, and in regard to the question at issue in this case, the court said that whether a bill which had been duly enrolled can be impeached when the journals affirmatively show that it never was passed, was a question not before them, and indicated that it would be a proposition not readily solved.   Koehler & Lange v. Hill, 60 Ia., 543, 554.

We can not but regard the clear weight of authority in this country as sustaining the propriety of consulting the journals in reference to a matter which the constitution expressly requires to be recorded therein, concerning the constitutional procedure for the passage of an act; and in case upon such an examination it affirmatively appears in respect to the requirements aforesaid that the bill did not, in fact, pass the Legislature, or did not receive the constitutional majority, and therefore did not constitutionally become a law, they may be used to impeach the enrolled act, although the latter is signed by the presiding officers of both houses, and carries the approval of the governor. That such is the weight of authority is recognized by the text writers.   In Cooley on Constitutional Limitations, it is said,  " If it should appear from these journals that any act did not receive the requisite majority, or that, in respect to it the Legislature did not follow any requirement of the constitution, or that in any other respect the act was not constitutionally adopted, the courts may act upon this evidence and adjudge the statute void."   And again,  " It will not be presumed in any case, from a mere silence of the journals, that either house has exceeded its authority, or disregarded a constitutional requirement in the passage of legislative acts, unless where the constitution has expressly required the journals to show the action taken, as for instance, where it requires the yeas and nays to be entered."   3d ed., pp. 135, 136.   See also page 141; Sutherland Stat. Const., Secs. 41–44.

The provisions of our constitution affecting the question before us are as follows :

" Each house shall keep a journal of its proceedings, and may in its discretion from time to time publish the same, except such parts as require secrecy; and ayes and noes on any question shall at the request of two members be entered upon the journal." (Art. 3, Sec. 13.)

" No bill shall become a law except by a vote of a majority of all the members elected to each house, nor unless on its final passage the vote taken by the ayes and noes and the names of those voting be entered upon the journal." (Art. 3, Sec. 25.)

" The presiding officer of each house shall in the presence of the house over which he presides sign all bills and joint resolutions passed by the Legislature immediately after their titles have been read, and the fact of signing shall be at once entered upon the journal." (Art. 3, Sec. 28.)

It will be observed that the constitution provides in a very positive and mandatory manner that no bill shall become a law except by a vote of a majority of all the members elected to each house, and that no bill shall become a law unless on its final passage the vote be taken by ayes and noes, and the names of those voting be entered upon the journal. The journal record, therefore, will disclose whether or not any measure, upon its final passage, has received the constitutional number of votes. The presumption unquestionably is, that an act found properly signed by the presiding officers, approved by the governor and deposited in the secretary's office with the other acts of the session, was regularly passed; which is only to be overcome by evidence of which the courts take judicial notice, showing the contrary. It is well settled that whenever the existence of an act of the Legislature is called in question, the court may resort to any source of information capable of conveying to the judicial mind a clear and satisfactory answer to such question. Not only by the weight of authority, but upon principle, as well, we are convinced the constitutional provisions aforesaid constitute the journals concerning the action of the Leg-

islature upon the final passage of an act, a record, which, by an affirmative showing to the contrary, is competent to overthrow the presumption arising from the certificates of the presiding officers, and the lodgment of the enrolled act with the secretary.

The constitution makes no distinction between the force to be given to the authentication by the presiding officers, and the journal account of the legislative procedure in the respect mentioned. Both requirements proceed from the same source; and it is difficult to perceive any sound reason why the final authentication by the officers should be conclusive of the action of the Legislature, when such action is also required to be made a matter of journal entry. The provision that the names of those voting shall be entered upon the journal in connection with the requirement that the vote shall be taken by ayes and noes, and in the same section with the limitation upon legislative power to pass any law, must be considered as intending to subserve a more important purpose than that of simply indicating how any particular member voted. The design was clearly to perpetuate a record or evidence of the fact that the act was passed in strict accordance with the fundamental law. No court disputes the proposition that the Legislature is powerless to enact a law in violation of the constitutional requirements, and that no bill becomes a law if, in fact, it was not passed by the Legislature. (Field v. Clark, supra.) The divergence of views arises concerning the character of the evidence which may be accepted in the determination of that question. The English decisions, and those of some of the States, denying any right to consult the journals are not in point, owing to a radical difference between the record authority of the journals of Parliament, and of the Legislatures of such States, and legislative journals, under a constitution like our own. Here, the journals are not kept merely in the interest of orderly procedure, but they exist in obedience to a constitutional command, and the nature of their contents is to some extent prescribed. As it is the pecu-

liar province of the courts to pronounce upon the validity
of legislative enactments, they should possess authority to
have recourse to the constitutional record of legislative
procedure, in so far, at least, as that record is constitu-
tionally required to make disclosure, and within that limit
to the extent of giving effect to an affirmative showing.

As to the act in question, the journal shows that it
passed the House regularly and with the constitutional
number of votes, in the first instance. There were four
sections to the bill, the last two, however, respectively
merely repealing inconsistent acts, and providing the time
for its taking effect. The merits of the act were contained
in the first two sections, and the second largely depended
upon the first as to its effect and application. When the
bill reached the Senate, that body proceeded to strike out
all of section one as it had passed the House and inserted
new provisions in its place, and then passed the bill in
regular form. Upon its transmission to the House the
Senate amendment was not concurred in. These facts
affirmatively appear; and thus, up to that point it is clear
that the same bill had not passed both houses. The
House had agreed to one measure and the Senate to
another. Thereupon a conference committee having been
duly appointed a report was submitted by it proposing
other provisions for section one. Both journals contain a
copy of that report with the amendment proposed; and
in both houses said amendment was adopted, the vote
thereon being taken by ayes and noes, and the names of
those voting thereon being entered upon the journals of
the Senate and the House respectively. It thus by
affirmative showing appears that the Senate receded from
its former amendment, and passed the bill with the
amendment reported by the committee. The House
adopted that amendment, and thus both houses ultimately
agreed upon, and, by the constitutional number of votes
as disclosed by the journals, passed the same measure.
The final action of both houses is recorded in the journals.
We need not decide whether the final action on the

amendment is, within the sense of the constitution, the final passage so as to require the vote thereon to be taken by ayes and noes and the names of those voting to be entered upon the journal. In this case, at least, that was done, and indicates that such was the legislative understanding. It is sufficient that, with regard to the act under consideration, there appears an affirmative showing that the Senate amendment, which was enrolled as section one, did not ultimately pass either house, and did not at any time receive the sanction of the House of Representatives. The act which secured executive approval was not the act which passed the Legislature, and the latter was not approved by the governor, nor was it presented to him for such approval.

The contents of a pending bill, or an amendment thereto need not be recorded at length in the journal; and it is entirely probable that had the amendment reported by the committee, upon which the final action was taken, been omitted, the presumption would be indulged in that the enrolled act correctly represented it; but in this instance it was copied in the record in full, and thus explains the vote in each house. It is inseparably connected with the final action of both bodies, and the court is not at liberty to presume, that, as its entry was not required, the vote adopted the section as it is found in the enrolled act. The journals positively and with distinctness inform us that the two houses respectively by the vote of their members adopted as section one of the act, the provisions reported therefor by the committee, which report appears in the journal immediately preceding the record of the motions to adopt and the vote thereon.

Our conclusions on this branch of the case are, therefore, that we have the authority, and it is our duty, to examine the journals to determine whether or not the act in question was passed by a majority of the members elected to each house, that being a matter which the constitution requires to be shown by the journal. That it is affirmatively disclosed by the journals, that section one

of the act as enrolled and published, did not finally pass either branch of the Legislature. That by the affirmative showing of said journals, it was not passed by a majority of the members elected to each house, and is therefore not a law, and must be adjudged void. Section one, as passed by the Legislature, was not copied into the enrollment, and did not receive executive approval. Therefore that did not become a law. In this case there is no question as to the silence of the journals involved. It is a common holding that, as to matters not positively required by constitutional mandate to be entered upon the journals, their silence would not vitiate the law. It is, however, also held that even as to those matters an affirmative showing that some essential constitutional provision had not been complied with would be sufficient to authorize the courts to declare the law void.

The question next arises, What effect does the invalidity of Section one have upon Section two, and the subsequent sections of the act? The act is composed of four sections. Section two regulates the fees to be collected upon sales of real estate for the non-payment of taxes by the county treasurer, and provides that such fees shall be paid into the county treasury. It also prescribes what shall be stated in the advertisement preceding such sales. Section three repeals all acts and parts of acts inconsistent with that act, and Section four provides that the act shall take effect and be in force from and after its passage. In the view we take of this case it is unnecessary to decide the question whether upon the failure of any portion of an enrolled act by reason of a non-compliance with some constitutional requirement in the passage of the bill, the entire act would, in every such case, be void.

We are entirely clear, however, that if the portion of the act which actually passed the Legislature and is not included in the enrolled and published statute, has any material relation to other portions of the act so as to modify, restrict, or extend its application, then such other portions must also fall. With reference to the act

in question, we are of the opinion that, standing alone, Section two would have to be construed as regulating only sales of real estate for taxes, such as the county treasurer under other laws would have authority to make; and, in the absence of such provision as appears in Section one, which we hold to be void, that officer sells only for delinquent State, county, and school district taxes; and also that the reference to the advertisement in Section two would be held to apply to only such sales by the county treasurer, and not to sales by municipal corporations or officers thereof, for the non-payment of taxes.    In Section one, however, as reported by the conference committee and adopted by both houses, there was a proviso that all sales of real estate for the unpaid taxes due thereon to any city, town, or village, by the treasurer of any such city, town, or village, should be governed by the provisions of that act; so that if Section one as actually passed by the Legislature had been copied in the enrolled act and approved by the governor, the advertisement, at least, provided for in Section two and possibly the fees would have applied to sales made by such municipal treasurers.    Indeed, under the provisions of Section one, as it appears in the enrolled act and printed laws, the method of advertising and possibly the fees prescribed by Section two would apply to sales of lands for delinquent city taxes.    It will thus be observed that by eliminating Section one, as it actually passed the Legislature, and also eliminating Section one as found in the enrolled act and printed laws, the application of Section two is made much narrower than would have been the case had the act as actually passed been correctly enrolled and approved by the governor.    We are of the opinion, therefore, that Section two is so inseparably connected with the preceding section that without such preceding section it can not be allowed to stand.    Section three, which merely repeals all inconsistent and conflicting acts, has no effect whatever without the two previous sections, and the same observation applies to Section four, so that practically there is

nothing in the act to take effect. Our conclusion therefore is that the entire act must be held to be void.

Answering the questions reserved for our opinion by the district court, we say to the first question, Yes, to the extent to which the journals are required by the constitution to show the procedure of the Legislature respecting its action upon a bill.

To the second question, Section one of Chapter fifty-six, of the laws of the year 1897, as the same appears in the bound volume of the laws for said year, is not valid.

To the third question, No part of said Section one is valid.

To the fourth question, Section two of said act is not valid, and Section three is of no effect.

In respect to questions five, six, and seven we say, that in view of the decision respecting Chapter fifty-six of the laws of 1897, the matters involved in each question are not pertinent to the issues in this case, and it is unnecessary to answer them. The duty with reference to the sales of real estate for unpaid taxes must be determined by the laws as they exist, irrespective of the act designated as Chapter fifty-six of the laws of 1897. Owing to the exigencies of the case, our conclusions were orally announced on the first day of October, with the understanding that the opinion would be written, and the order thereon entered at a subsequent time.

CORN, J., concurs.

The late MR. CHIEF JUSTICE CONAWAY concurred in the conclusions as orally announced by the court.