## HANEY vs. THE STATE.

1. MURDER: *Indictment must show manner of killing.*
   An indictment for murder that fails to show the manner of the killing is fatally defective.

34  263
58  116

2. STATUTE: *Mistake in. When corrected by the court.*
   Where it is obvious that the legislature did not intend to use a particular

word written in a statute, and it is further apparent what word they *did* intend, the courts will correct the mistake by substituting the word. intended for the one used.

APPEAL from *Clark* Circuit Court.
Hon. H. B. STUART, Circuit Judge.
*Henderson, Attorney General,* for the State.

EAKIN, J.    Appellant was indicted at the July term, 1879, of the Clark circuit court, for murder.   The indictment charged that on, etc., at, etc., he "did willfully, unlawfully and feloniously, and with malice aforethought, and with premeditation, kill and murder James Bell, with a gun loaded with gunpowder and leaden balls, and held in the hand of him, the said John Haney."   He was, on trial, found guilty of manslaughter, and his punishment fixed by the jury at seven years in the penitentiary.   He moved for a new trial, for reasons unnecessary now to notice, and afterwards in arrest.   Both motions were overruled.   Bill of exceptions taken, and appeal.

The grounds of the motion in arrest were:

First—That the indictment does not charge the manner of killing with sufficient certainty.

Second—That the facts stated do not constitute a public offense ; and—

Third—That the supposed act of the general assembly of the state of Arkansas, approved March 11, 1879, in pursuance of which the term of the Clark circuit court was then held, was unconstitutional and void.

The first and second causes were sufficient.   The judgment should have been arrested, and the prisoner held for further action on the part of the grand jury.   The indictment was fatally defective, in failing to indicate the

manner of the killing. This case is the same in principle with *Thompson v. State, 26 Ark., 323.* See also *Edwards v. State, 27 Ark., 493.*

The court is urged, and it seems proper, to settle also the third ground of the motion in arrest, as it affects all the courts of the eighth judicial circuit, and renders the administration of justice therein uncertain. This point the court may notice from the record, without considering whether it was properly raised by motion in arrest of judgment.

By act of December 14, 1875, the courts of this district were to be held as follows: In *Montgomery* county, on the *last* Mondays in January and July. These are taken as the initial points of reckoning for all the other counties.

The courts of *Scott* were prescribed for the first succeeding Mondays; of *Polk*, for the second Mondays; of *Sevier*, for the third Mondays; of *Little River*, for the fifth Mondays; of *Howard*, for the eighth Mondays; of *Pike*, for the ninth Mondays; and of *Clark*, for the tenth Mondays, referring all to one point of calculation for the beginning of the terms; and allowing to some counties one, to some two and to some three or more weeks for the term.

When the twelfth judicial district was created, on the eighth of March, 1877, Scott was transferred to that, and Montgomery county took the place of Scott in the times for holding her courts. The other counties remained as before, all reckoning from the last Mondays of January and July.

This system of taking certain Mondays of the year, and fixing the terms of courts for a succession of counties, by reckoning so many weeks from those Mondays, has always been a favorite one in our state; and was largely adopted in the establishment of the circuits in the constitution of 1874.

Sec. 1 of the act of March 11, 1879, provides: " That, hereafter, the circuit courts in the eighth judicial circuit shall be begun and held as follows, to-wit:

" Commencing in Clark, on the fourth Monday in January and July.

" Montgomery, third Monday after the fourth Monday in January and July.

" Polk county, the fourth Monday after the fourth Monday in January and July.

" Sevier county, the fifth Monday after *the fifth* Monday in January and July.

" Little River county, the seventh Monday after the fourth Monday in January and July.

" Howard county, the ninth Monday after the fourth Monday in January and July.

" Pike county, the eleventh Monday after the fourth Monday in January and July."

And it was provided that the act should take effect from and after the first day of May, 1879.

This act, as literally read, presents the anomaly that, whilst the time for all the other courts of the district are reckoned from the common points of the fourth Mondays of January and July, the courts for Sevier alone are fixed by reckoning from the fifth Mondays of those months. This is not only anomalous, but absurd, inasmuch as those months can only at intervals of years have five Mondays; and the legislature would appear to be singling out this county, to deprive her of the due and regular means for the administration of justice accorded to all the counties of the state. The general assembly had no power to do this, and can not be supposed to have intended it, if any plain, manifest intention consistent with the constitution can be discovered; and if such intention can be plainly seen, the lit-

eral reading of the act must yield to it. This *intention* of the legislative power is the paramount object of judicial search, in aid of which all rules of construction are devised.

If the act is held invalid with regard to Sevier county, and the courts of that county be held under the previous act, it will clash with the times prescribed in the new act for other counties. The act can not be apportioned, and must be sustained or discarded in toto.

It is probable that the courts of the eighth circuit have been held in the counties other than Sevier, under the new act, inasmuch as the same judge is supposed to have presided that refused to arrest the judgment in this case.

To hold the act invalid, will produce great confusion as to the rights of suitors, and others who have acted under orders of the court. Although this consideration would not justify this court in sustaining the act, unless some constitutional intention can be derived from its face, in connection with other acts on the same subject, it, nevertheless, imposes on the court the duty of searching carefully for such valid intention, *ut res magis valeat, quam pereat.*

Renouncing the idea that the general assembly intended to do an absurd and unconstitutional thing, which would be the result of a literal construction, let us inquire if there can be plainly discovered any other fixed and certain intention.

The obvious general intention of the act is to fix upon the fourth Mondays of January and July, for the beginning of the spring and fall circuits in Clark county; and to prescribe the succession of the several courts in the several counties, with such intervals as to allow, at each, proper time for the transaction of business. If we read the clause regarding Sevier county as reckoning from the *fourth* in-

stead of the *fifth* Mondays in January and July, it will harmoniously effect this general intention; and no other reading will. For instance, it will allow three weeks for Clark; then one for Montgomery; one for Polk; two for Sevier; two for Little River; two for Howard; and then the circuit will end with Pike. This system will be hopelessly and irreconcilably disturbed by any other reading of the act. The use of the word *fourth* in the place indicated, is the only key to harmony.

One reading the act will have suggested to his mind at once that the use of the word fifth is a clerical error, and that it resulted by a natural law of the mind (tending as it does to run in formulas), from the tautology of the preceding clause, repeated in the next. A copyist, or a draughtsman, after using "fourth after the fourth," would be apt, carelessly, to use the terms, "fifth after the fifth."

Whilst this clerical error is sufficiently manifest from the general tenor of the act, which evidently meant to fix the times of holding the courts of the district in regular and orderly succession from the fourth Mondays in January and July, the court would, if necessary, find confirmation of this view in the original act, as introduced into the general assembly. The clause in question was written by the draughtsman as printed, but he evidently discovered the mistake, and blurred over the letters "*if*" in the word *fifth*, and wrote over them the letters "our," intending to change the word "fifth" into "fourth." In this shape, the bill passed without amendment. In enrolling, the clerk, by inadvertence, failed to notice the correction; and the enrolled bill, as signed, had the word, in this place, "fifth," as originally written. It was so signed by the presiding officers of the two houses, and the governor.

The courts have it in charge to declare the law, and may,

of their own motion, resort to any aids in determining what the law is; especially in cases where no rights of property have been fixed by action upon the act as enrolled. It is not necessary, in this case, as remarked, to resort to the original bill. The mistake is obvious on the face of the act.

It is very true, as a general rule of construction, that where the language of an act is plain and unambiguous, the courts must give it effect, as it stands, or declare the law unconstitutional. But this rule is subject to much qualification, and does not apply to cases of plain clerical errors, where it is obvious that the legislature *did not intend* to use the word as written, and it is further apparent what word they *did* intend. A mistake of this nature may be corrected by the courts, upon as sound principle as a mistake in a deed. It is not judicial legislation, nor judicial interference with the legislative will. It is in support of the legislative will, and wholly distinct from the reprehensible practice of warping legislation, to suit the views of the courts as to correct policy. The only conditions to be observed in the exercise of this power of literal correction are, that the courts should be thoroughly and honestly satisfied of the legislative intent, irrespective of the policy of the act.

It would be frightful if, in a case like the present, the business of all the courts of a circuit should be delayed by such a mistake, and the rights of litigants thrown into confusion until the next session of the legislature, for the want of this wholesome power, which is constantly applied to the contracts of individuals. Such is not the meaning nor spirit of our constitutional provision that the different departments should be independent of each other. They should respect the constitutional will and intention of each other,

and that being clearly ascertained, should act in consonance therewith. These views are not new. In some form, the spirit of them has been often declared by the courts. See, for instance, the cases of *People v. King, 28 Cal., 265; Moody v. Stephenson, 1 Minn., 401; Nazro v. Mer. Ins. Co., 14 Wis., 295.*

The court did not err in refusing to arrest the judgment on the ground that the court was not held at the proper time. The circuit courts of the eighth district should proceed, as if the clause of the act of the eleventh of March, 1879, regarding Sevier, read as follows: " Sevier county, the fifth Monday after the *fourth* Monday in January and July."

For the insufficiency of the indictment, the judgment should have been arrested.

Let it be reversed, and the case remanded, with directions to hold the prisoner for such further action as the grand jury may take.