## STATE EX REL. SMITH v. GILLESPIE, COUNTY CLERK, ET AL.

ANTI-GAMBLING STATUTE, VALIDITY OF — STATUTES — LEGISLATIVE JOURNALS.

1. An entry in the House journal stating, under the caption, "Signing of Bills," that the Speaker announced that he was about to sign certain described House enrolled acts, and following with a description of certain Senate enrolled acts, amounts to a substantial compliance with the constitutional requirement that the fact · of signing be at once entered on the journal; it appearing that said bills had duly passed the Legislature and had been duly enrolled, and were then ready for the signatures of the presiding officers; and the act assailed bearing such signatures, and the signature of the Governor approving it, being deposited in the office of the Secretary of State, and published as one of the laws passed by said Legislature.

2. Chapter 65 of the published laws of 1901 is a valid and constitutionally enacted law of the State.

[Decided February 18, 1904.]                (75 Pac., 1135.)

RESERVED questions from the District Court, Sheridan County, HON. JOSEPH L. STOTTS, Judge.

The facts are stated in the opinion.

*Lonabaugh, Blake & Hamilton,* for relator.

We submit that the entry on the House Journal is not a proper record of the fact of the signing of the bill by the presiding officer.

The term "about to sign," interpreted in the ordinary significance of the words, means that the Speaker intended and was getting ready to sign the acts enumerated; they mean that he was on the point or verge of signing them, *but they do not signify that there was an actual signing of the bill in the presence of the House,* NOR IS IT A RECORD upon the journal of the House that the bills were actually signed. The distinction is between going to sign the bill

and actually signing it and recording the signing thereof in the journal.

Technical as this point may appear to be, it is yet one of importance. The provision of the constitution is mandatory, not directory. (Bank v. Com'rs, 119 N. C., 214; Durfee v. Harper, 56 Pac., 585 (Mont.), and cases cited in the opinions in those cases; Oakland, &c., v. Hilton, 11 Pac., 3; State v. Tuffley, 12 Pac., 837; Cooley's Const. Lim., 183.)

The constitutionality of a statute may be tested in a mandamus proceeding. This is the law as shown by the decisions in many jurisdictions. (People v. San Diego, 85 Cal., 369; McConihe v. State, 17 Fla., 238; People v. Thompson, 155 Ill., 451; Auditor v. Adams, 13 B. Mon., 150; Gayle v. Owen Co. Ct., 83 Ky., 61; State v. Stoddard (Nev., 1900), 62 Pac., 237; Morgan v. Monmouth P. R. Co., 26 N. J. L., 99; Burch v. Baxter, 12 Heisk., 601; Packard v. Henderson, 15 Lea, 431; Smith v. Saginaw, 81 Mich., 123; Pistorius v. Stempel, 81 Mich., 133.) There is apparently no difference between asserting the unconstitutionality of a statute on the part of the relator in mandamus and asserting such unconstitutionality as a matter of defense, and the weight of authority is in favor of permitting the unconstitutionality of a statute to be used as a matter of defense in a mandamus proceeding. (See the cases in 19 Enc. Law, 764.)

It is true that there are a few cases wherein it has been said that the constitutonality of a statute cannot be questioned by mandamus proceedings, but those cases, when examined, appear to be decided principally on other grounds, and so far as they pass upon the propriety of questioning the constitutionality of a statute in mandamus, they appear to rest upon a reason which does not exist in Wyoming, viz: that mandamus only lies in a "clear case" of right, and that a case is not "clear" which requires a statute to be declared unconstitutional before it can be decided in favor of the applicant for mandamus. In Wyoming mandamus is not

restricted to such "clear" cases. It lies in any case for the purpose of commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station. (R. S. Wyo., 4194.) That the proceeding by mandamus to effectuate this statute is not restricted to cases technically "clear" is shown by Section 4198 of the same statutes, which provides that the proceeding shall be by alternative mandamus in "all other cases" than those which are "clear." It is evident from this section of the statute that mandamus can be used in any case whatsoever within the meaning of Section 4194.

It is argued that the statutes allowing license to be issued for gaming purposes are themselves unconstitutional and void, as being within a prohibition of legislative action deduced from Section 20 of Article 7 of the constitution of the State, said section providing as follows: "Sec. 20. As the health and morality of the people are essential to their well-being, as to the peace and permanence of the State, it shall be the duty of the Legislature to protect and promote these vital interests by such measures for the encouragement of temperance and virtue, and such restrictions on vice and immorality of every sort. as are deemed necessary to the public welfare." The answer to this argument is that the Legislature, and not the courts, is the judge of whether an act which it passes is one essential to the well-being, health and morality, peace and permanence of the State.

*J. F. Hoop* and *E. R. French,* for defendants.

Mandamus will not lie to determine the constitutionality of an act of the Legislature. (19 Ency. Law, 763; 43 Pac., 567; 18 Neb., 506; 69 N. W., 294.)

Where the journal is silent, the presumption of law is that the Legislature did its duty. The fact that the bill was signed by the President of the Senate and Speaker of the House and approved by the Governor, and published under the signature and seal of the Secretary of State, are presumptions in favor of the bill. (2 L. R. A., 609.)

But, aside from these questions, the court's answers to the questions reserved should sustain the general demurrer to the petition for this: That this action invokes an extraordinary power of the court, *affirmatively,* in aid of unlimited, unregulated public gambling, something that, as this court will take judicial notice, is contrary to sound public policy and to good morals.

A writ of mandamus is not strictly a writ of right. The court has a discretion to exercise; and will withhold the writ in case of doubt. (High. Extra. Leg. Rem., 11, 12, 33, Sec. 32.)

In exercising such discretion, the court may and should consider the interests of, and the effect upon, third persons; and, among such third persons, the public, the community, will and should be considered; and the writ may be refused on the ground that the general public welfare would otherwise suffer. (19 Ency. Law. (2d Ed.), 730-c, 754, and cases cited.)

The former gambling license law (Secs. 2179, 2181, R. S. 1899) was unconstitutional by the terms of Section 20 of Article 7 of the constitution.

Is the Legislature here *protecting and promoting* "the morality of the people," or is it even placing such "restricttions upon immorality" as are deemed necessary? Manifestly not. That law did not restrict in any degree; it threw the door wide open.

It is no less against the spirit and letter of the organic act which restricts legislation to "rightful" subjects. (Organic Act of Ter. of Wyo., Sec. 6.) "Rightful"—just, lawful, true, honest, equitable, proper. (Webster.)

Is unrestricted, unregulated public gambling, carried on as a business by all comers under the sanction of the State, rightful, proper, moral, for the best interest of the people, and to be sustained by this court *in this form of proceeding?*

POTTER, JUSTICE.

This is a suit in mandamus to require the issuance to relator of licenses for the carrying on of the games of faro

and roulette. It involves the same question this day decided in the case of State ex rel. Hynds v. Cahill, County Clerk, et al. Several other questions are stated in the order sending the cause to this court which need not be decided. One question only is discussed in the brief of counsel for relator so far as the constitutionality of the act known as Chapter 65 of the laws of 1901 is concerned, viz: Was the fact of the signing of the bill by the Speaker of the House entered upon the House Journal in compliance with the provisions of Section 28 of Article 3 of the constitution? No contention is made in the brief of any other irregularity in the passage of the act in question. Some other questions are discussed, such as whether mandamus will lie, and whether the law as it originally stood authorizing the licensing of gambling games was void as against morality and public policy. A decision of those questions is evidently not required if the act of 1901 be held constitutional and valid.

The whole matter has been considered at length in the case of State ex rel. Hynds v. Cahill, County Clerk, and it will be unnecessary, therefore, to here state the reasons for our conclusion. We hold that the entry in the House Journal is a substantial compliance with the constitution in the respect complained of, and that it does appear therefrom that the Speaker of the House signed the bill in question in the manner and at the time required by the section of the constitution aforesaid; and that Chapter 65 of the laws of 1901 is a valid and constitutionally enacted law of this State. For all the purposes of the case, this is the only question that need be decided; and is a sufficient answer to the reserved questions, so far as they are involved in the determination of the matter before the District Court.

CORN, C. J., and KNIGHT, J., concur.