JOHN TOOMEY ET AL. v. GOLDSBORO LUMBER COMPANY.

(Filed 15 March, 1916.)

**1. Statutes—Interpretation—Intent—Amendatory Acts.**

Where a statute refers to a prior legislative enactment, and in the caption and body of the act purports to be amendatory, substituting and amending different sections, the legislative intent cannot be construed to repeal the former act.

**2. Same—Drainage Districts—Reference to Sections—Mistakes.**

The legislative intent as gathered from chapter 238, Laws 1915, being to amend chapter 442, Laws 1909, relating to the establishment of drainage districts, it is held that section 2 of the later act, repealing, as printed, section 2 of the former one, should, by correct interpretation, refer to section 11, upon the same subject-matter, *i. e.,* the assessment of damages, and not to section 2 as printed, which sets out in detail the requirements of the petition, the method of obtaining jurisdiction of the parties, and provides for the appointment of viewers and of a drainage engineer, evidently Roman numerals in the later act being mistaken for the figure 11. Hence, the two acts should be construed together, so as not to repeal chapter 442, Laws 1909.

APPEAL by plaintiffs from *Whedbee, J.,* at February Term, 1916, of CRAVEN.

Civil action, tried on demurrer.

This is a proceeding under the Drainage Act of 1909, ch. 442, Laws 1909.

The defendants demurred to the petition which was filed in accordance with section 2 of the act of 1909, upon the ground that section 2 was repealed by chapter 238, Laws 1915, and that this rendered the act of 1909 inoperative.

The Drainage Act of 1909 consists of forty sections. The first section confers jurisdiction on clerks of the Superior Court to establish drainage districts, and the second sets out in detail the requirements of the petition, the method of obtaining jurisdiction of the parties, and provides for the appointment of viewers and of a drainage engineer. The third section prescribes the duties of the viewers, and this and the succeeding sections state the successive steps in the proceeding, section 11 being as follows: "It shall be the further duty of the engineer and viewers to assess the damages claimed by any one that is justly right and due to them for land taken or for inconvenience imposed because of the construction of the improvement, or for any other legal damages sustained. Such damage shall be considered separate and apart from any benefit the land would receive because of the proposed work, and shall be paid by the board of drainage commissioners when funds shall come into their hands."

The act of 1915, ch. 238, is entitled "An act to amend chapter 442 of the Public Laws of 1909," and the material parts of it are as follows:

"SECTION 1. That section 2 of chapter 442 of the Public Laws of 1909 be and the same is hereby stricken out and the following substituted and enacted in lieu thereof: 'It shall be the further duty of the engineer and viewers to assess the damages claimed by the owners of any land located in such a proposed drainage district, and to embrace in such assessment the value of any land actually taken and the injury done to any land not taken, including damage done to the growing crops and timber located thereon, as well as inconveniences suffered by such landowners on account of such proposed drainage or other improvements. Such damages, when assessed and ascertained, shall be considered separate and apart from any benefits such land might receive because of the proposed improvements, and shall be included in the total cost of such improvements, and collected in the manner provided for the collection of other moneys to defray the costs of said improvements under the provisions of this act, and when so collected shall be paid by the board of drainage commissioners to the person or persons entitled thereto.'

"Section 2. That section 16 of said act be amended as follows: By inserting between the words 'assessed' and 'is,' in line eight of said section, the words 'in the manner provided in section 11 hereof,' and between the words 'assessed' and 'is,' in line eleven of said section, the words 'in the manner hereinbefore provided.' "

Judgment was entered sustaining the demurrer, and the plaintiffs appealed.

*Guion & Guion for plaintiffs.*
*D. E. Henderson, T. D. Warren, and A. D. Ward for defendants.*

Allen, J. It is clear that the General Assembly did not intend to repeal the Drainage Law of 1909 by the act of 1915.

In the first place, the act of 1915 purports in the title and in the body of the act to amend and not to repeal, and if the purpose had been to destroy, it would have repealed the act of 1909 instead of striking out a section of it.

Again, in the first section of the act of 1915 a new section is *substituted* for a section of the act of 1909, and in the second section there is an amendment to section 16 of the original act.

Why call the act amendatory and why substitute a section in the place of one in the act of 1909 and amend another, if the later act renders the first inoperative and void?

What, then, is the effect of the act of 1915?

If we follow the letter of the statute and substitute section 1 for section 2 of the act of 1909, it will be found that the subject-matter of the act of 1915 has no relation to that of section 2 of the act of 1909, and the later act will be made inharmonious and absurd, and it will have the further effect of incorporating as section 2 of the act of 1909 what is already in section 11 of the act in a modified form.

If, therefore, the two acts are considered together and due consideration is given to the intent of the General Assembly to amend and not to repeal, it is manifest that "section 2" referred to in the first section of the act of 1915 was intended to be "section 11," the mistake doubtless occurring in printing, the figure 11 being taken for the Roman numeral II.

If so, have we the authority to give effect to the purpose and intent of the General Assembly, notwithstanding the mistake? Both reason and authority answer the question in the affirmative.

"It is an ancient maxim of the law, applicable to all written instruments alike, that *falsa demonstratio non nocet cum de corpora constat.* Accordingly, in the case of a statute the Court will inspect the whole act; if the true intention of the Legislature can be reached, the false description will be rejected as surplusage or words substituted in the place of those wrongly used which will give effect to the law. For

example, a word in a statute defining the boundaries of a county may be made 'north' instead of 'south' if it is clear that north was really intended. On the same principle a mistake in the date of the passage, or the title of an act of the Legislature, referred to by a subsequent amendatory act, will not prevent the operative effect of amendatory acts, provided the latter so particularly refers to the subject-matter of the former as clearly to indicate the act intended to be amended; and if a later statute especially refers to a designated section of an earlier act, to which it can have no application, but there is another section of the prior act to which, and to which alone, in view of the subject-matter, the latter act can properly refer, it will be read according to the manifest purpose of the Legislature, and the misdescription will not vitiate." Black Interp. Laws, sec. 38.

"Legislative enactments are not to be defeated on account of mistakes or omissions, any more than other writings, provided the intention of the Legislature can be collected from the whole statute. If the mistake renders the intention doubtful, we may look to the title and preamble as well as the body or purview of the act for assistance in arriving at it, and not until all these fail can the act be held inoperative." *Nazro v. Ins. Co.,* 14 Wisc., 298.

"If a section in an amendatory act refers to a section of the act amended by number, and the section referred to does not express the legislative intent, but another section is found which does express that intent, the reference will be treated as being made to the latter section." *People v. King,* 28 Cal., 266.

In *Palms v. Shawano,* 61 Wisc., 217, the word "south" used in the legislative act defining the boundaries of a county was read "north"; in *Stoneman v. Whaley,* 9 Iowa, 390, a subsequent act purported to repeal the sixteenth section of another act, and it was held that the repealing act referred to the sixth section; and in a case from 3 Utah, 334, a subsequent act referred to section 152 of a prior act, and it was construed to mean section 151.

The question was fully considered by this Court in *Fortune v. Comrs.,* 140 N. C., 328, and the Court there says: "A misdescription or misnomer in a statute will not vitiate the enactment or render it inoperative, provided the means of identifying the person or thing intended, apart from the erroneous description, are clear, certain, and convincing.' Black Interp. of Laws, sec. 558. Under this rule we may call to our aid anything in the act itself, or even in the alleged erroneous description, which sufficiently points to something else as furnishing certain evidence of what was meant, though the reference to the extraneous matter may not in itself be full and accurate. The rule, even when literally or strictly construed, does not require that the erroneous description shall be altogether rejected in making the search for the true meaning;

but it may be used in connection with anything outside of the statute to which it refers and which itself, when examined, makes the meaning clear. The erroneous description may in this way be helped out by extraneous evidence. Black, *supra,* sec. 38. But ours it not so much an erroneous as an inaccurate description, and the question is whether its words are adequate to express with sufficient certainty the intention of the Legislature. It has been held that if a later act expressly refers to a designated section of an earlier one, to which it can have no application, but there is another section of the prior act to which, and to which alone, in view of the subject-matter, the later act can properly refer, it will be read according to the manifest purpose of the Legislature, and the misdescription will not prevent the reasonable construction that the Legislature intended to refer to the latter section. *School Directors v. School Directors,* 73 Ill., 249; *Plank Road Co. v. Reynolds,* 3 Wisc., 258; Black, *supra,* sec. 38."

This case has been approved in *Comrs. v. Stedman,* 141 N. C., 451; *S. v. Lewis,* 142 N. C., 651; *McLeod v. Comrs.,* 148 N. C., 86; *Pullen v. Comrs.,* 152 N. C., 558; *Murphy v. Webb,* 156 N. C., 407, and in the last case the language which we have cited from *Fortune v. Comrs.* is quoted and approved.

We are, therefore, of opinion that the two acts can stand together, and that section 2, referred to in the act of 1915, means section 11 of the act of 1909.

Reversed.