### STATE v. BRYANT SIZEMORE AND GASTON SIZEMORE.

(Filed 12 November, 1930.)

**1. Statutes B a—Clerical error in amendatory statute may be corrected by the courts in order to carry out legislative intent.**

The courts will correct a clerical error appearing by reference to the former statute in the repealing one when it is plain by construing the two together that the error was purely a clerical one and that to permit it to stand would defeat the intent of the Legislature and to correct it will clearly carry out the intent; and, when necessary the amendatory reference to a section in the former statute will be read into the statute in the place of the section specifically referred to.

2. **Same—Amendment to State Game Law held to contain clerical error in reference to repeal of former statute which will be corrected.**

Where an amendment to our game law contemplates in express terms the continuance of a tax by the department of conservation and development for the repayment of a sum of money, in a certain amount, to be advanced by the State Treasurer out of general funds for its initial expenses, and the amendment repeals a section by reference to number that would defeat this intent, and by reading in another section of the same act the intent would be clearly enforced: *Held*, the error is a clerical one which the courts by interpretation will correct so as to carry out the clearly expressed intent of the Legislature.

3. **Game A b—Held: foxes may not be hunted without a license under the provisions of State Game Law.**

When foxes are defined as a wild animal by a State Game Law, requiring a license to be charged for hunting wild animals, applying to a county that has no closed season for the hunting of foxes: *Held*, the license is required though as to the particular county the time is not restricted for the hunting of foxes.

4. **Game A a—State Game Law makes county game commissions subordinate to State Commission and to this extent modifies C. S., 2079-2086.**

The effect of the North Carolina Game Law is to make county game commissions subordinate to the State Commission, the powers of the former being merely advisory or recommendatory until approved by the State Commission, and to this extent C. S., 2079-2086 are amended thereby.

APPEAL by defendants from *McElroy, J.,* at March Term, 1930, of STOKES.

Upon separate warrants issued by a justice of the peace the defendants were convicted of a violation of the North Carolina Game Law, and from the judgment pronounced they severally appealed to the Superior Court. By consent the cases were tried together; the defendants were convicted, and each appealed from the judgment of the Superior Court.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Dallas C. Kirby for defendants.*

ADAMS, J. The defendants were convicted of hunting foxes in Stokes County in breach of certain provisions of the North Carolina Game Law, and they assign as the basis of their appeal from the judgment the refusal of the trial court to sustain their demurrer to the evidence and to dismiss the action. C. S., 4643.

The warrants charge the defendants with a violation of the law in October, 1928. The act, known by the short title of "The North Carolina Game Law," went into effect on 1 June, 1927. Public Laws 1927,

ch. 51. Section 27 contains this provision: "No person shall at any time take any wild animals or birds without first having procured a license as provided in this act, which license shall authorize him to hunt or trap only during the periods of the year when it shall be lawful." The defendants say that this section was repealed by Public Laws 1927, ch. 250, in the following clause of the fourth section: "That section twenty-seven of 'The North Carolina Game Law' is hereby specifically repealed." If section 4 contained nothing more, the defendants' argument would be conclusive on this point. But it further provides: "And the following shall be inserted in lieu thereof: Department of Conservation and Development Authorized to Advance Funds. In order to pay the initial expenses, including the purchase of supplies, printing and distribution of licenses and for all other necessary expenses for the enforcement of this act pending receipt of the first year's hunting licenses, the State Treasurer is hereby authorized and directed to advance out of the State appropriation allotted by the General Assembly of nineteen hundred and twenty-seven to the Department of Conservation and Development a sum not to exceed ten thousand dollars. This amount shall be refunded to the account of the Department of Conservation and Development out of the first moneys received under 'The North Carolina Game Law.' All vouchers involving expenditures and the amount so advanced by the Department of Conservation and Development shall be approved by the director of said department."

It is perfectly clear that the General Assembly intended to repeal section 26 and not section 27 of chapter 51. The amendment set out in section 4 of chapter 250 does not purport to deal with the subject-matter of section 27, but with that of section 26; section 4 of chapter 250 and section 26 of chapter 51 provide an appropriation for the initial expenses necessary for the enforcement of the act. If the amendment set out in section 4 is inserted in section 27, not only will section 26 conflict with the amendment, but the plain purpose of the law will be destroyed by abolishing all the provisions relating to the license and the revenue intended thereby to be raised. In these circumstances it cannot reasonably be doubted that the words, "section twenty-seven" in section 4 of chapter 250 were erroneously substituted in lieu of the words "section twenty-six." This conclusion finds support in the fact that section 4 was repealed by the General Assembly at the session of 1929. Public Laws 1929, ch. 278, sec. 2. This situation raises a question as to the effect of an error which is apparent upon the face of a statute and the nature of which is ascertainable from the statute itself.

In the construction of statutes one of the fundamental rules is that clerical errors which if uncorrected would destroy an act or defeat its intended operation, will not vitiate the act, but will be corrected if the

legislative intent is apparent. Rectifying an obvious error is not correcting an act of the Legislature; it is giving effect to the legislative intent as indicated by the context, in which the real purpose is manifest. It is the province of the Court to correct such errors when they are obvious and particularly when a literal interpretation would involve an obscurity. Black on Interpretation of Laws, sec. 37; *Fortune v. Commissioners,* 140 N. C., 322. This Court has applied the principle in *Improvement Co. v. Commissioners,* 146 N. C., 353, in which it was held that by a clerical error the words "Washington County" had been substituted for Robeson County; in *Murphy v. Webb,* 156 N. C., 402, in which it was said that a reference to certain Public Laws instead of Private Laws was a clerical error which was subject to correction by the courts; and in *Toomey v. Lumber Company,* 171 N. C., 178, in which the Court quoted with approval the decision in *People v. King,* 28 Cal., 266, to this effect: "If a section in an amendatory act refers to a section of the act amended by number, and the section referred to does not express the legislative intent, but another section is found which does express that intent, the reference will be treated as being made to the latter section."

Adhering to this rule of construction we are led to the conclusion that section 4 of chapter 250 was intended to repeal and does repeal section 26 of chapter 51 of the Public Laws of 1927, and that section 27 was not thereby vitiated or impaired.

As above pointed out, section 27 provides that no person shall take any wild animals without having a license, which shall authorize hunting only "when it shall be lawful." Stokes County had no close season for foxes, and for this reason the defendants took the position that they had a right to hunt these wild animals without a license. This is a misconception of the statute. "No person shall at any time take any wild animals without first having procured a license." When a hunter has the license he may hunt in the open, but not in the close season; but he may not hunt in either season without a license.

The defendants question whether the North Carolina Game Law repeals sections 2079-2086 of the Consolidated Statutes. Stokes is one of the counties in which by virtue of section 2079, the game laws were administered through the county game protection commission and in which licenses issued by the Audubon Society were not good. But the Audubon Society was dissolved and the acts relating to its incorporation (C. S., 2087-2097) were repealed by chapter 51, section 39, of the Public Laws of 1927; and in section 42 it was enacted that whenever existing laws are in conflict with chapter 51, the latter shall be construed to repeal the former and to vest in the State Game Commission the administration of all laws relating to game conservation. In section 18 it

is provided that chapter 51 shall not be construed to dissolve any of the county game commissions or to prohibit their creation, but that the powers of the county commissioners shall be of a nature advisory and recommendatory to the State Game Commission and that the exercise of any powers by them shall require the approval of the State Game Commission. The effect is to make the county commissions subordinate to the State Commission and to clothe them with powers which are merely advisory or recommendatory until approved by the State Commission. To this extent the former law is repealed. This policy is upheld by the provisions of chapter 253 of the Public Laws of 1927.

We discover no fatal inconsistencies in the several sections of the North Carolina Game Law. A fox, defined as a game animal in section 2 is, nevertheless, a wild animal within the meaning of section 27. If there is no close season for foxes they may be taken not only with dogs, but "in any manner" (section 33); but unless he have a license the hunter may not take foxes with or without dogs. The provision that the license shall be void after the first day of April does not imply that another may not be procured by proper application and with due regard to the open and close seasons. We find

No error.