ANTONIO AGUDO ET AL., Plaintiffs and Appellants, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendant and Appellee.*

No. 7017.   Argued November 8, 1935.—Decided May 6, 1936.

Rehearing denied May 29, 1936.

*Leopoldo Feliú* and *Edgar S. Belaval* for appellants.   *B. Fernández García, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General,* for appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

Antonio and Ramón Agudo, doing business under the name of Agudo Bros., were the owners of a certain number of slot machines on which up to April 25, 1933, they had

---

* NOTE.—On appeal to the U. S. Circuit Court of Appeals for the First Circuit, this decision was affirmed.   See 89 F. (2d) 481.

paid taxes without objection. After that date the Treasurer of Puerto Rico, by reason of certain legislation, insisted that they should pay an increased tax. Agudo Bros. paid several increases under protest and brought this suit to recover the same. The District Court of San Juan ultimately dismissed the complaint.

The appellants maintain that there is no existing law under which these increases in the tax could be validly collected. What happened was that a bill purporting to raise the tax rate per machine was passed by both Houses of the Legislature. By the act of the enrolling clerk the bill was signed by the President of the Senate and the Speaker of the House with certain words independently added and which were not in the minds of the legislators and not included in the bill as passed by them. The bill agreed upon contained the provision that each machine should pay a tax of $75 a quarter, and it was sent to the Governor with the words "a tax is levied which shall not exceed $75 a quarter."

When the Legislature discovered this mistake it passed a resolution wherein a correction or an attempt at correction was made. This resolution was called a concurrent resolution. There was no request for the return of the bill, but the said concurrent resolution was sent to the Governor. The Governor with the enrolled bill and the concurrent resolution before him, struck out the matter to which the concurrent resolution referred, and then, with what may be called an amendment, approved the bill. In other words, the bill as enrolled was verbally changed back to express the original intention of the Legislature, not by action in either house or both of them, but by the Governor himself. *Non constat*, if it is important, that the Governor might actually have been at the Legislature at the time that he approved the bill.

The principal contention of the appellants is, it may be said, that there is no authority anywhere to put an act on the statute books in the manner attempted in the present case.

More specifically, they insist that what was done was an exercise of legislative power by the Governor in contravention of the provisions of the Organic Act; also, that once an enrolled bill is sent by the Legislature to the Governor, the former loses all power and control over it.

In another case that we have pending, it is urged that the ordinary legislative power in enactment must be exercised by a bill introduced in either house and not by a joint resolution. The appellee maintains that the action of the Legislature was not a joint resolution but a concurrent one. The doubt here suggested as to what the Legislature can or can not do by a resolution becomes unimportant if we are right about the fundamental conclusions at which we have arrived.

The appellants cite a certain amount of jurisprudence. It may be true as a general rule that bills as passed by the Legislature can not be amended or changed after they have been enrolled and sent to the Governor, but we are not at all clear that the Legislature, under adequate circumstances, may not recall a bill. *Baltimore Fidelity Warehouse Co.* v. *Canton Lumber Co.*, 86 Atl. 188. We have consciously used the word "passed" in the previous sentence because it is the key to the whole situation. We are not begging the question. It is a conceded fact that the bill, as passed by the Legislature originally, did not contain the words that were put into the enrolled bill. The question is not whether the Legislature may add or subtract from a bill, but whether it may correct an actual mistake in its enrollment.

In the judicial sphere there is no doubt that a court may correct its judgments during the term, truly to express what it intended to say or to avoid mistakes. It would be absurd to suppose that an enrolled bill hastily signed by the two presiding officers of the Legislative Houses could not be corrected at the same legislative session, and so put into force the bill actually passed. In point of fact, we find a court

correcting an enrolled bill to make it conform to the bill as actually passed. *Haney* v. *State,* 34 Ark. 263.

If a court may do this, a matter on which we do not care to express an opinion, then surely there must be some way in which the Houses of the Legislature and the Governor acting together can make the correction. There must be some way, at least during the legislative session, to make a bill, erroneously enrolled, express the truth. We have no doubt of this. It reduces itself merely to a question of the form or manner. It may be that the best practice is for the Legislature, by a resolution or otherwise, to request that the bill be returned to it. The cases to the contrary only decide that for a genuine legislative purpose, that is, with the idea of adding or subtracting, fresh legislation is beyond its power. What the Legislature wanted to accomplish was to correct a mistake in the enrollment. Assuming that the Legislature can not technically recall a bill for any purpose, then the conclusion is forced upon us that the Legislature must be able to do something else. There can be no question that the Legislature may actually sit and physically pass resolutions which are bound to be enrolled. Whether they are to be effective or not is another question. The Legislature passed a concurrent resolution in which it told the Governor officially that a mistake had been made in the enrollment and likewise informed him how the bill had actually been passed. This for the proper action of the Governor.

When the Governor is considering a bill and it is before him for approval or disapproval the jurisprudence is clear that he is acting in a legislative capacity. Hence, on the theory that the bill could not be returned, the Governor had the residuary power to correct it to make it conform to the true will of the Legislature. In *State ex rel. Ball* v. *Hall,* 263 N. W. (Nebraska, 1935) 400, it was the Governor who acted to correct an enrolled bill and the facts are very similar to those of the case at bar, with this difference, that the governor himself discovered the error and made the correc-

tion. Thus we see no objection for the Legislature to do this in the form of a resolution whether joint or concurrent. Even if the bill could be returned we hold that it was within the power of the Legislature to make the correction by resolution.

The lower court held that appellants' failure to present receipts showing the involuntary nature of the payment was fatal to their cause of action. The assignment of error on this ground would have only been important in case the bill had been declared invalid and we are holding to the contrary.

The judgment appealed from should be affirmed.

Mr. Justice Travieso took no part in the decision of this case.

ON MOTION FOR REHEARING

May 29, 1936

Mr. Justice Wolf delivered the opinion of the court.

■ At the hearing, from something said by counsel, we formed the impression, perhaps erroneously, that if the case was decided in favor of the Government on the question of the validity of the act involved, it was unnecessary to discuss the failure of the appellants to accompany certain receipts with the complaint. The appellants now practically ask us to cover this matter and on further consideration we are of the opinion that this was an adjective matter which, if decided in favor of the Government, would have done away with the necessity of considering the case on the merits. Our general impression is in favor of the appellants and we shall briefly state why.

The complaint contained the following averment in each of its three causes of action:

" . . . whereupon they made payment of such fees in the sum of . . . to the defendant, under protest as to $65.00 for each one of said licenses, or the total sum of . . . under which conditions the same were issued by the defendant to them in the name of their aforesaid agent, for the said quarter; and that, in accordance with

the regulations of the defendant applied by his Department and the law then in force, such payment under protest was noted on each of said licenses which, upon their expiration on June 30, 1933, were taken away by the defendant, and that, in conformity with the said law and regulations, no receipts for the fees thus paid were issued or delivered by the defendant to the plaintiffs herein nor to their aforesaid agent, for which reason the receipts required by the law governing this action are not attached to the within complaint; and the plaintiffs further allege that the said sum of . . . has not been paid to them either wholly or partially.''

The Treasurer demurred to the facts alleged. The lower court upheld the demurrer on the ground that the filing of the receipts together with the complaint was mandatory under section 5 of Act No. 8 of 1927, and that the plaintiffs' averment, *supra,* was insufficient inasmuch as it did not allege the destruction of the receipts or the defendant's refusal to supply copies thereof.

After examining the Act of 1927, *supra,* we feel that the intention of the Legislature was that payments of taxes should be made under protest if an action was to be brought for their recovery. The presentation of a receipt, to our mind, is a requisite, the fulfillment of which would obviate the necessity of proving the involuntary nature of the payment, but never should its absence, when there is an allegation of payment under protest and of justification for the non-production of the receipt, render the complaint demurrable. We hold, therefore, that what took place was equivalent to the presentation of the receipts or the Treasurer waived this necessity and that their actual presentation became unimportant.

With this explanation the so-called motion for reconsideration will be overruled.

Mr. Justice Córdova Dávila took no part in the decision of this case.